**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MARIA CONSUELO DIAZ,

               Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security

              Defendant.

Case No. CV 14-3762 SS

**MEMORANDUM DECISION AND ORDER**

**I.**

**INTRODUCTION**

Plaintiff Maria Consuelo Diaz ("Plaintiff") brings this action seeking to reverse the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below,

the decision of the Commissioner is REVERSED and the action is REMANDED for an award of benefits consistent with this decision.

## II.

### PROCEDURAL HISTORY

Plaintiff applied for Supplemental Security Income ("SSI") benefits on October 16, 2006. (Administrative Record ("AR") 102). Plaintiff alleged disability beginning on March 11, 2006, due to residual pain and limitations from surgery for left breast cancer, a thyroid condition, left arm/hand pain and swelling, headaches from a tumor in her head, high cholesterol, and back pain that radiates to her left leg. (AR 115-119, 122-129, 139-143). Plaintiff's application was denied on February 7, 2007, and on reconsideration on September 13, 2007. (AR 44-53). Plaintiff requested a hearing on October 12, 2007. (AR 54-56). Her initial hearing was held on November 3, 2008 before Administrative Law Judge ("ALJ") Mary L. Everstine. (AR 27-41). Plaintiff testified with the aid of an interpreter. (AR 27-41). Vocational expert ("VE"), Edward Bennett also testified. (AR 27-41). The ALJ issued an unfavorable decision dated November 26, 2008. (AR 20-25).

On February 18, 2011, the Appeals Council denied Plaintiff's requested review. (AR 1-4, 12-13). On April 1, 2010, Plaintiff commenced a civil action in the United States District Court, Case No. CV 11-2808-SS. (AR 409-411). On March 1, 2012, the district court, remanded the matter for further proceedings. (AR

2

1  412-427).   Meanwhile,  Plaintiff  filed  another  application  for

2  Title  XVI  benefits  on  March  23,  2011,  which  was  associated  with

3  the  prior  application  for  a  hearing  by  the  Appeals  Council.   (AR

4  436).

5

6      A  hearing  was  held  on  February  4,  2013.  Plaintiff  testified

7  with  the  assistance  of  an  interpreter,  along  with  a  different

8  V.E.,  Sharon  Spaventa.   (AR  356-391).  The  ALJ  indicated  she  was

9  willing  to  issue  a  favorable  decision  based  on  a  later  onset  date

10  of  disability  in  March  of  2011.   (AR  358-365).   Plaintiff  was

11  unwilling  to  amend  her  alleged  onset  date  to  March  of  2011,  and

12  the  hearing  continued.   (AR  358-365).  The  ALJ  issued  an

13  unfavorable  decision.  (AR  309-331).

14

15      On  March  1,  2013,  Plaintiff  filed  written  exceptions  and

16  later  submitted  further  legal  argument  and  supporting  medical

17  records  to  the  Appeals  Council.   (AR  285-300,  307).   On  April  16,

18  2014,  the  Appeals  Council  declined  to  reverse  the  ALJ.   (AR  279-

19  284).   Plaintiff  timely  filed  this  action  on  May  27,  2014.

20

21                              **III.**

22                        **FACTUAL  BACKGROUND**

23

24      Plaintiff  was  fifty-seven  years  old  at  the  time  of  her

25  second  hearing.   (AR  102).   Plaintiff  has  a  sixth  grade  education

26  and  does  not  speak  or  understand  English.   (AR  368).   Plaintiff

27  alleges  an  onset  date  of  March  11,  2006  due  to  residual  pain  and

28  limitations  from  breast  cancer  surgery,  a  thyroid  condition,  left

                              3

arm/hand pain and swelling, headaches from a tumor in her head, high cholesterol, and back pain that radiates to her left leg. (AR 102-106, 115-119, 122-149, 139-143). Plaintiff has a vocational background as an assembly person in the aircraft manufacturing industry where she had to lift cables that weighed up to thirty pounds. (AR 369).

A.   **Plaintiff's Medical History**

    1.   **Abraham Orozco, M.D.**

    Plaintiff received extensive treatment at CMH Center for Family Health in Oxnard, California. (AR 184-186, 188-205). Dr. Orozco, Plaintiff's treating physician, provided records showing at least twelve visits documenting Plaintiff's lumbar spine stenosis, disc disease and radiculopathy. (AR 185-188, 190, 200, 203). On a note dated March 5, 2007, Dr. Orozco indicated that Plaintiff had a permanent condition limiting her left arm and restricting her ability to work. (AR 270). On October 5, 2007, Dr. Orozco documented numbness from Plaintiff's "left knee on down." (AR 192). On October 24, 2008, Dr. Orozco completed a "Medical Source Statement (Physical)" form where he diagnosed Plaintiff with lumbar spinal stenosis, disc disease, and left leg radiculopathy. (AR 269). He also found that the diagnosis had existed for a year prior. (AR 269). He found that Plaintiff could occasionally and frequently lift/carry/upward pull less than ten pounds, walk less than two hours, sit continuously for less than six hours and has moderate push/pull limitation in her

upper extremities and severe limitation in her lower extremities. (AR 269).  A 2008 CT scan and MRI supported Dr. Orozco's findings.  (AR 247-248, 245-246).

**2.  Angela Rabkin, M.D.**

On September 28, 2007, Dr. Rabkin documented that Plaintiff was having some lumbar pain in the back of her leg, numbness in her calf, and that the Plaintiff was moving cautiously due to six weeks of back pain.  (AR 162).  Dr. Rabkin noted that Plaintiff had continuing complaints of pain and fatigue in the left arm associated to repetitive movement.  (AR 161).  Dr. Rabkin completed a "Medical Source Statement (Physical)" form on October 19, 2008, where she noted Plaintiff's past breast cancer and current left lumbar radiculopathy.  (AR 271).  Dr. Rabkin also found that Plaintiff could occasionally lift/carry/upward pull less than ten pounds, stand/walk for less than two hours in an eight hour work day, must alternate sitting continuously, and had moderate limitation to push/pull in both her upper and lower extremities.  (AR 271).  On November 11, 2009, Dr. Rabkin wrote "these symptoms [left arm pain and swelling] are more pronounced when [Plaintiff] uses her arms for heavy work. She has other more disabling medical conditions."  (AR 554).

**3.  Andraus Thurman, M.D.**

Dr. Thurman saw Plaintiff twenty-two times between April of 2010 and March of 2013.  On April 5, 2010, Dr. Thurman listed

5

1  Plaintiff's diagnoses including dyspepsia, left breast cancer
2  status post mastectomy, prolactinoma, low back pain, Sjogren's
3  disease, fibromyalgia, hypothyroidism, thyroid nodules, and
4  elevated liver enzymes. (AR 652). He also noted that Plaintiff
5  was taking a number of medications including Levothyroxine,
6  Femara, Tylenol, Cabergoline, and Meloxicam. (AR 652). On May 6,
7  2010, Dr. Thurman wrote in his treatment record that Plaintiff
8  had swelling in the left arm, which gets worse with repetitive
9  movement, prolactinoma, a tumor inside of the head that can cause
10  vision and balancing problems, headaches and nausea,
11  osteoarthritic changes in her lumbar spine area, Sjogren's
12  disease and fibromyalgia, both of which are rheumatoid diseases
13  that can flare up with activity. (AR 553). Dr. Thurman noted
14  that Plaintiff's back pain was related to degenerative joint
15  disease that was noted on a previous MRI. (AR 552). The doctor
16  also noted that Plaintiff had received two epidurals for her
17  pain. (AR 552). On March 10, 2011, Dr. Thurman completed a left
18  trochanteric bursa steroid injection for bursitis and diagnosed
19  the Plaintiff with thrombophlebitis. (AR 638). In an April 25,
20  2011 clinic note, Dr. Thurman stated that he saw Plaintiff for
21  lower back pain, L5 radiculpathy, weakness in her left leg and
22  referred her for an MRI of her lumbar spine. (AR 701, 810-812).
23  In a MRI report dated June 9, 2011, it is noted that Plaintiff
24  had "moderately severe bony narrowing of the left L4-L5 nerve
25  root canal. A broad, central, paracentral and lateral disc bulge
26  associated with dorsal spondylosis, and ventral osteophytes off
27  of L1-L2 and L4." (AR 698-699).
28  \\

1    Plaintiff went to ten physical therapy sessions at St.
2    John's Regional Medical Center from November 2010 to March 2011.
3    (AR 570-597).   On November 19, 2012, Dr. Thurman wrote a letter
4    concerning Plaintiff's health, stating that Plaintiff had pain
5    symptoms including arthritis and ongoing back pain for which she
6    takes Tylenol, Tramadol, Tylenol with codeine and Meloxicam.  (AR
7    821).   On November 26, 2012, Dr. Thurman noted that Plaintiff had
8    a "headache with decrease in visual activity on the left eye as
9    well as a history of prolactinoma." (AR 856).

10

11    Plaintiff was also treated at the Ventura County Medical
12    Center from 2008 to 2012 for a total of thirty-three visits. (AR
13    563-567, 709-714, 717-721, 723, 726, 729, 733-752, 772-773, 802).
14    Doctors noted findings of Sjogren's syndrome, obesity,
15    prolactinoma, osteoporosis, hyperparathyroidism, hypothyroidism,
16    metabolic syndrome, back pain/degenerative disc disease,
17    hyperlipidemia and fibromyalgia and prescribed Femara,
18    Levothyroxine, Nexium, Cabergoline, Meloxicam, Tramadol,
19    Hyrdoxyzine, Ameprazole, Lasatudue, Zometa and Tylenol.  (AR 563-
20    567, 707, 710, 711, 719-721, 729, 733, 743).

21

22    **B.    Examining Doctor's Opinions**

23

24        **1.    Ursula Taylor, M.D.**

25

26    Dr. Taylor conducted an independent internal medicine
27    evaluation on August 30, 2011. (AR 655).   Dr. Taylor found that
28    Plaintiff's grip strength in her left hand was weaker than in her

right, minimal swelling of the left arm in comparison to the right and mild to moderate thoracic kyphosis. (AR 657-658). Dr. Taylor also noted that the Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, limited due to her medical history and pain. (AR 659). Dr. Taylor concluded that the Plaintiff had a high risk of fractures, gross handling and reaching should be limited to frequently due to left arm pain on the left hand, that she should avoid extremes in temperatures due to obesity, swelling and some lower extremity edema and all postural movements should be limited to occasionally based on back pain and history of osteoporosis and left arm swelling. (AR 659).

   **2.   Sean Leoni, M.D., Q.M.E.**

   Dr. Leoni, in his 2007 summary report of a Complete Internal Medicine Evaluation, noted that the Plaintiff had "no limitations to lifting, sitting, standing or walking" and that she was "able to travel by car or bus if necessary, perform basic activities and move and handle objects." (AR 153). Dr. Leoni diagnosed Plaintiff with history of breast cancer, hypothyroidism, and a history of prolactinoma. (AR 153).

**C.   <u>Vocational Expert</u>**

   Vocational Expert Sharon Spaventa had difficulty pinpointing Plaintiff's prior work in the Dictionary of Occupational Titles ("DOT"). (AR 369-377). The VE found a few positions in the DOT

that sounded similar to Plaintiff's prior work, but each of those positions included other tasks that the Plaintiff did not perform. (AR 374). The VE testified that a hypothetical individual who is of advanced age, unable to communicate in English, with similar past work experience, who is limited to occasional overhead reaching with the left upper extremity, frequent gross handling with the left upper extremity, occasional climb, balance, stoop, kneel, crouch, crawl, who should avoid climbing ladders or exposure to temperate extremes could generally perform the job pursuant to the DOT. (AR 385-386). However, when asked by Plaintiff's attorney if the hypothetical individual could still do the job if "she needed thirty minute unscheduled breaks throughout a week, due to headache and dizziness which ended up in vomiting," the VE testified that such a condition would "eliminate all employment." (AR 389).

**D.   <u>Plaintiff's Testimony</u>**

Plaintiff testified that she had not been working since March of 2006. (AR 30). Plaintiff testified that she is a United States citizen and has a sixth grade education. (AR 368). Plaintiff said that she had not returned to work due to pain in her left arm because of a mastectomy and pain in her back and left leg. (AR 31-32). Plaintiff also complained of headaches. (AR 35). Plaintiff is unable to use her left arm for activities and limits her daily tasks, such as cooking, and needs help for other tasks, such as dressing. (AR 33). Plaintiff also said

1    that she was unable to lift objects heavier than "a dish with

2    some food" or a pot.  (AR 34).

3

4        Plaintiff said that she has trouble sleeping because of the

5    pain in her arm.  (AR 35).  Plaintiff testified that her job was

6    to prepare cables and then assemble parts.  (AR 35).  Her job

7    also included reaching for parts, lifting up to thirty pounds,

8    taping, and sewing, when needed.  (AR 39).  In order to treat her

9    health problems Plaintiff takes "medications daily."  (AR 378).

10   Plaintiff testified that, on a scale of one to ten, the pain in

11   her head and bones was a ten.  (AR 379).  Plaintiff also stated

12   that she gets sleepy as a result of her medications.  (AR 379).

13

14       Plaintiff can walk about fifteen minutes, stand for about

15   twenty minutes, and sit for about half an hour at a time.  (AR

16   379).  Plaintiff lies down three to four times a day for about

17   half an hour each.  (AR 380).  On a typical day Plaintiff

18   described her day as "I sit down. I get up. I walk. I lay down."

19   (AR 380).  Plaintiff also explained that she gets dizzy spells

20   and headaches about two or three times per week, each event

21   lasting about half an hour until she vomits.  (AR 382).

22   Plaintiff also has continuous difficulty seeing through her left

23   eye.  (AR 383).  Plaintiff talked about having fibromyalgia,

24   explaining that the pain makes her forget little things, and does

25   not allow her to concentrate on her tasks.  (AR 383).

26

27

28

**E.    Lay Witness Testimony**

Plaintiff's son, Manuel Diaz, filled out a third party Function Report on April 9, 2011.  (AR 515-522).  In his report, Mr. Diaz stated that because of Plaintiff's problems sleeping at night caused by her back, chest, and arm pain, she wakes up at ten or eleven in the morning.  (AR 515).  He also stated that after eating breakfast, she "goes back to rest." (AR 515).  Mr. Diaz stated that his mother used to enjoy spending time with the family, cooking, shopping, walking and cleaning but now she is unable to do those activities.  (AR 516).  He stated that his mother needs help from his father in order to get dressed, and has difficulty bathing her feet.  (AR 516).  (AR 519).

Mr. Diaz stated that his mother is too scared of falling and hurting herself to leave the house alone.  (AR 518-519).  He explained that Plaintiff could not lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs or complete tasks, while she is unable to follow instructions or use her hands for long periods of time.  (AR 520).  Mr. Diaz also stated that the Plaintiff was prescribed a walker and cane.  (AR 521).

**IV.**

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful

11

activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 404.1520, 416.920.  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one on the list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(4) Is the claimant capable of performing his past
work?  If so, the claimant is found not disabled.
If not, proceed to step five.

(5) Is the claimant able to do any other work?  If
not, the claimant is found disabled.  If so, the
claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,
262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R.
§§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

The claimant has the burden of proof at steps one through
four and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an
affirmative duty to assist the claimant in developing the record
at every step of the inquiry.  Id. at 954.  If, at step four, the
claimant meets his burden of establishing an inability to perform
past work, the Commissioner must show that the claimant can
perform some other work that exists in "significant numbers" in
the national economy, taking into account the claimant's residual
functional capacity, age, education, and work experience.
Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20
C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).  The Commissioner may do
so by the testimony of a vocational expert or by reference to the
Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404,
Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock
v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).
When a claimant has both exertional (strength-related) and

13

1    nonexertional limitations, the Grids are inapplicable and the ALJ

2    must take the testimony of a vocational expert.  Moore v. Apfel,

3    216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856

4    F.2d 1335, 1340 (9th Cir. 1988)).

5

6                                 **V.**

7                        **THE ALJ'S DECISION**

8

9         The ALJ employed the five-step sequential evaluation process

10   and concluded that Plaintiff was not disabled within the meaning

11   of the Social Security Act.  (AR 324).  At step one, the ALJ

12   found that Plaintiff had not been in substantial gainful activity

13   since October 4, 2006.  (AR 317).  At step two, the ALJ found

14   that Plaintiff has several severe impairments which include a

15   history of left breast cancer; status post left breast

16   mastectomy, obesity, a history of hypothyroidism, fatty liver

17   with hepatomegaly, and lumbar pain.  (AR 317).  The ALJ also

18   found that Plaintiffs other impairments such as Sjogren's

19   syndrome, fibromyalgia, prolactinoma, and osteoporosis were not

20   severe.  (AR 318).

21

22       At step three, the ALJ found that Plaintiff did not have an

23   impairment or combination of impairments that met or medically

24   equaled the severity of one of the listed impairments in 20.

25   C.F.R. Part 404, Subpart P, Appendix 1.  (AR 321).  The ALJ went

26   on to find that Plaintiff had an RFC to perform light work as

27   defined in 20 C.F.R. 416.697(b) "except [Plaintiff] is limited to

28

                                   14

occasional overhead reaching with the left upper extremity."
(Id.).  In addition:

> [Plaintiff] can engage in frequent, but not
> constant, gross handling of the left upper
> extremity. [Plaintiff] has no limitations in
> the use of her right upper extremity.
> [Plaintiff] is limited to occasional
> climbing, balancing, stooping, kneeling,
> crouching, and crawling. [Plaintiff] is
> precluded from working around unprotected
> heights or climbing ladders. [Plaintiff]
> must avoid concentrated exposure to
> temperature extremes."

(AR 321).  In reaching this opinion, the ALJ specified that she
had considered all symptoms and the extent to which they could
reasonably be accepted as consistent with the objective medical
evidence and other evidence.  (Id.)  The ALJ also stated that she
considered opinion evidence in her finding.  (Id.).

The ALJ questioned Plaintiff's testimony as to the "extent
she alleged an inability to perform any work."  (AR 322).  The
ALJ noted that Plaintiff claimed to not be able to lift any
weight, but then admitted to being able to lift a cup.  (Id.).
The ALJ also noted that although Plaintiff claimed a need to
alternate between sitting, standing, walking and lying down for
pain relief, "Plaintiff did not appear uncomfortable at any time

1  during the hearing or when rising from her chair at the end of

2  the hearing." (Id.).

3

4      The ALJ reviewed the specific findings of Plaintiff's

5  physicians and questioned their findings. (AR 323). The ALJ

6  claimed that both Dr. Orozco and Dr. Rabkin merely "checked boxes

7  on a form" and thus failed to discuss any clinical findings.

8  (Id.). The ALJ also stated that Plaintiff had only pursued

9  conservative care for her alleged pain and had rejected advised

10 treatment such as epidural injections. (Id.). The ALJ also

11 found that Dr. Thurman's statement that the Plaintiff cannot work

12 should be rejected because Dr. Thurman described "most symptoms

13 as very well controlled on medication." (AR 324). The ALJ found

14 that reports by consultative doctors, Dr. Leoni and Dr. Taylor,

15 were most consistent with medical evidence finding that Plaintiff

16 had no functional limitations and that Plaintiff could perform a

17 wide range of light work. (AR 324).

18

19     At step four, the ALJ found that Plaintiff is capable of

20 performing her past relevant work as an electrical assembler, and

21 that the work does not require the performance of work-related

22 activities precluded by Plaintiff's RFC. (Id.). As a result, at

23 step five the ALJ found Plaintiff "not disabled." (AR 325).

24

25

26

27

28

1                                  **VI.**

2                       **STANDARD OF REVIEW**

3

4       Under 42 U.S.C. § 405(g), a district court may review the

5  Commissioner's decision to deny benefits. The court may set aside

6  the Commissioner's decision to deny benefits. "The court may set

7  aside the Commissioner's decision when the ALJ's findings are

8  based on legal error or are not supported by substantial evidence

9  in the record as a whole." <u>Auckland v. Massanari</u>, 257 F.3d 1033,

10 1035 (9th Cir. 2001) (citing <u>Tackett</u>, 180 F. 3d at 1097); <u>Smolen</u>

11 <u>v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing <u>Fair v.</u>

12 <u>Bowen</u>, 885 F.2d 597, 601 (9th Cir. 1989)).

13

14      "Substantial evidence is more than a scintilla, but less

15 than a preponderance." <u>Reddick</u>, 157 F.3d at 720 (citing <u>Jamerson</u>

16 <u>v. Chater</u>, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant

17 evidence which a reasonable person might accept as adequate to

18 support a conclusion." <u>Id.</u> (citing <u>Jamerson</u>, 112 F.3d at 1066;

19 <u>Smolen</u>, 80 F.3d at 1279). To determine whether substantial

20 evidence supports a finding, the court must "'consider the record

21 as a whole, weighing both evidence that supports and evidence

22 that detracts from the [Commissioner's] conclusion.'" <u>Auckland</u>,

23 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th

24 Circ. 1993)).  If the evidence can reasonably support either

25 affirming or reversing that conclusion, the court may not

26 substitute its judgment for that of the Commissioner. <u>Reddick</u>,

27 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457

28 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff contends that the ALJ erred for three reasons. First, she claims that the ALJ improperly assessed and rejected the opinions of Plaintiff's treating physicians. Second, she contends that the ALJ improperly evaluated Plaintiff's RFC and her ability to perform past relevant work at step four. Third, Plaintiff argues that the ALJ improperly discredited Plaintiff's testimony and failed to assess the third party written testimony.

**A.   ALJ Improperly Rejected The Treating Physicians' Opinions**

Plaintiff claims that the ALJ's failed to give proper weight to the treating physicians' opinions. Dr. Orozco, Dr. Rabkin, and Dr. Thurman, all treating doctors, provided detailed reports and notes explaining the severity of Plaintiff's health problems. (AR 161, 269-270, 247-248, 245-246, 162, 187, 245-246, 267, 269, 271, 645-646, 650-654, 821-824).   The ALJ rejected the treating physicians' opinions and based her finding on the opinions of Dr. Leoni and Dr. Taylor.   (AR 324).   However, the ALJ failed to provide legitimate reasons for rejecting the treating doctors' opinions.

The Ninth Circuit recognizes three types of physicians: (1) treating physicians, who examine and treat, (2) examining physicians, who examine but do not treat, and (3) non-examining physicians who neither examine nor treat.   Valentine v. Comm'r,

1   Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009).  Treating

2   physicians are given the greatest weight because they are best

3   able to observe their patients as an individual.  Connett v.

4   Barnhart, 340 F.3d 871, 874 (9th Cir. 2003; Thomas v. Barnhart,

5   278 F. 3d 947, 956-57 (9th Cir. 2002); Magallanes v. Bowen, 881

6   F.3d 747, 751 (9th Cir. 1989).  Accordingly, where the treating

7   physicians' opinion is refuted by another doctor, the ALJ may not

8   reject this opinion without providing specific and legitimate

9   reasons, supported by substantial evidence in the record.  Lester

10  v. Chater, 81 F.3d 821, 830-31; see also Orn v. Astrue, 495 F.3d

11  625, 632 (9th Cir. 2007); Ryan v. Comm'r of Soc. Sec., 528 F.3d

12  1194, 1198 (9th Cir. 2008).  However, treating physicians'

13  opinions are not given more weight if they are conclusory or lack

14  support in the medical evidence.  Batson v. comm'r of Soc. Sec.,

15  359 F.3d 1190, 1195 (9th Cir. 2004).

16

17      As Plaintiff's treating physicians, Drs. Orozco, Rabkin and

18  Thurman are presumed to be in a better position to assess

19  Plaintiff's functional limitations.  See Magallanes v. Bowen, 881

20  F.2d 747, 751 (9th Cir. 1989).  Nonetheless, the ALJ found that

21  because both Dr. Orozco's and Dr. Rabkin's assessment allegedly

22  "consisted of checking boxes on a short form," their opinions

23  should be given little probative weight.  (AR 319).  The ALJ also

24  found that "no physician [from Las Islas Family Medical Group]

25  imposed functional limitations on the claimant."  (AR 320).

26  These two reasons are not legitimate because they are

27  contradicted by substantial evidence in the record.

28

1    Dr. Orozco treated Plaintiff twelve times between September
2    5, 2006 and March 3, 2008. (AR 157, 185-186, 190, 192-193, 195-
3    197, 200, 203), and his records are detailed. Dr. Orozco
4    diagnosed Plaintiff with disc disease, left leg radiculopathy,
5    and lumbar spinal stenosis. (AR 269). Dr. Orozco also found
6    that Plaintiff had severe push/pull limitations in her lower
7    extremities, moderate push/pull limitations in her upper
8    extremities, along with occasional ability to lift/carry/upward
9    pull less than ten pounds for not more than one third of an eight
10   hour day, which constitute significant functional limitations.
11   (AR 269). A lumbar spine MRI and CT scan confirmed Dr. Orozco's
12   diagnosis, and showed that Plaintiff's impairments were
13   deteriorating. (AR 245-249). Plaintiff received two epidural
14   injections to ease her lumbar pain, contrary to the ALJ's
15   observation in her decision. (AR 277-278; AR 323 "[plaintiff"
16   declined epidural injections.").

17

18   Dr. Rabkin treated Plaintiff eleven times between September
19   22, 2006 and June 20, 2008. (AR 162-164, 169, 171-175, 255-262).
20   Like Dr. Orozco, Dr. Rabkin diagnosed Plaintiff with lumbar
21   radiculopathy and history of left breast cancer while finding
22   that Plaintiff had moderate push/pull limitations in both her
23   upper and lower extremities, and the ability to stand/walk for
24   less than two hours during an eight hour work day. (AR 271).

25

26   Examining physicians, Drs. Leoni and Taylor, each examined
27   Plaintiff once. (AR 153, 655). Dr. Leoni found that Plaintiff
28   had full mobility, no signs of weakness, and no limitations in

20

1    lifting/sitting/standing or walking. (AR 153). Dr. Taylor found

2    that Plaintiff was morbidly obese, had a history of osteoporosis,

3    mild to moderate thoracic kyphosis and used no assistive devices

4    to ambulate. (AR 659). Neither Dr. Leoni nor Dr. Taylor

5    completed diagnostic tests during their examination of Plaintiff.

6    (AR 655-660).

7

8        The ALJ credited the examining physicians' opinions and

9    rejected the treating physicians' opinions. The ALJ found that

10   both Dr. Orozco and Dr. Rabkin failed to discuss their clinical

11   findings by checking boxes on a form. (AR 323). In addition,

12   the ALJ found that no physician at La Islas Family Medical Group

13   identified any functional limitations for Plaintiff. (Id.).

14   Finally, the ALJ concluded that Plaintiff pursued only

15   conservative care for her alleged pain. (Id.). These reasons do

16   not qualify as "specific and legitimate" reasons because they are

17   not supported by the record.

18

19       The ALJ's finding that the treating physicians did not

20   properly discuss their clinical findings in making their

21   conclusions is not supported by the record. Dr. Orozco took

22   detailed notes of Plaintiff's conditions, ordered tests, referred

23   Plaintiff to other medical professionals, and made findings based

24   on the results he received. (AR 157, 185-186, 190, 192-193,

25   195-197, 200, 203). The CT scan and MRI Dr. Orozco ordered

26   validated his diagnosis. (AR 149-153). Dr. Orozco also filled

27   out a Medical Source Statement (Physical), provided by the Social

28   Security Administration by checking boxes to show Plaintiff's

abilities.  (AR 269).  The ALJ found that this form was not detailed enough to be given the proper weight that it deserves. However, this form along with the tests, observations, and notes provided by Dr. Orozco refute the ALJ's conclusion that Dr. Orozco's opinions were not supported by clinical findings.

Dr. Rabkin also kept detailed notes about Plaintiff's treatment.  (AR 161-162, 271, 554, 733-750).  Dr. Rabkin ordered a bone scan and an MRI to verify Plaintiff's disc disease and radiculopathy.  (AR 162, 750).  Dr. Rabkin filled out a Medical Source Statement (Physical), provided by the Social Security Administration, by checking boxes to show Plaintiff's limitations.  (AR 371)  The ALJ found that the form was not supported by medical data.  However, the form along with the medical records and tests described above refute the ALJ's conclusion.

The ALJ found that no physician at La Islas Family Medical Group found that the Plaintiff had any functional limitations. (AR 324).  Dr. Thurman, who saw Plaintiff thirty-one times, was a physician at La Islas Family Medical Group, and he opined that "the patient is no longer able to work at or even remotely near the capacity that she had done before."  (AR 648).  Dr. Thurman based his opinion on his observations of the Plaintiff during their time together, her medical history, diagnostic tests, an MRI and a CT scan.  (AR 552-553, 638, 648 701, 793-801, 810-812). The ALJ found that Dr. Thurman's opinion was unsupported by the record, but the record actually shows that Dr. Thurman performed

injections for Plaintiff's pain and recommended her for more testing. (AR 324, 638, 810-812). The ALJ erred by failing to recognize that Dr. Thurman, a physician at La Islas Family Medical Group, did in fact find that Plaintiff had functional limitations supported by clinical findings.

The ALJ's third reason, i.e., that Drs. Orozco, Rabkin and Thurman responded with limited and conservative treatment, is not supported by the record. All three physicians had a long and extensive treating relationship with Plaintiff and they extensively documented Plaintiff's lumbar pain. (AR 157, 162-164, 168-169, 171-175, 185-188, 190, 192-193, 195-197, 200, 203, 255-262, 794-797). Dr. Orozco diagnosed Plaintiff with lumbar spinal stenosis, disc disease and left leg radiculopathy. (AR 269). Dr. Rabkin diagnosed Plaintiff with left lumbar radiculopathy. (AR 271). Dr. Thurman diagnosed Plaintiff with degenerative joint disease, thrombophlebitis and bursitis. (AR 552-638). Dr. Orozco also ordered diagnostic tests, and advised Plaintiff to receive epidural injections to ease her pain, which she received. (AR 186, 277-278). Dr. Rabkin also ordered diagnostic tests. (AR 162-750). Plaintiff went to ten physical therapy treatments. (AR 570-597). Dr. Thurman completed a left trochanteric bursa steroid injection for bursitis. (AR 638). "Conservative treatment" is not a fair characterization of this record.

1    **B.    The ALJ Improperly Evaluated Plaintiff's RFC And Ability To**
2         **Perform Past Relevant Work At Step Four.**

3

4         Plaintiff claims that the ALJ's finding that Plaintiff "has
5    the residual functional capacity to perform light work as defined
6    in 20 C.F.R. 416.967(b)" with additional limitations is not
7    consistent with the record. (AR 321). Plaintiff also argues
8    that the ALJ's conclusion that Plaintiff can perform her past
9    relevant work as an electrical assembler was error. This Court
10   agrees.

11

12       **1.    ALJ's RFC Finding Fails to Consider Plaintiff's**
13            **Documented Limitations**

14

15       During step four of the five-step sequential process the
16   claimant carries the burden of proving that he cannot return to a
17   position similar to his past work as it is generally performed.
18   Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). The ALJ
19   must make a threshold determination as to the claimant's residual
20   function. This determination is not a medical opinion but
21   instead an administrative finding reached after consideration of
22   all the relevant evidence, including the diagnoses, treatment,
23   observations, medical records, and the Plaintiff's own subjective
24   symptoms. See Social Security Ruling 96-5p; 20 C.F.R. § 404.1527
25   (e)(2) (stating that a residual functional capacity finding is
26   not a medical opinion but an administrative finding that is
27   reserved to the Commissioner). The residual functional capacity
28   is what a claimant can still do despite existing exertional and

24

nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1). Once the ALJ determines the claimant's residual functional capacity, he then compares these limitations with the job duties of the claimant's previous work.

Here, the ALJ found that Plaintiff has the RFC to perform light work. Light work requires lifting up to twenty pounds, with ten pounds frequently, and walking and/or standing for up to six hours a day. See 20 C.F.R. §404.1567 and 416.967. Both Drs. Orozco and Rabkin, Plaintiff's treating physicians, found that Plaintiff could only lift/carry/upward pull less than ten pounds occasionally, frequently lift/carry/upward pull less than ten pounds, stand/walk for less than two hours of an eight hour day, and sit continuously for less than six hours in an eight hour day. (AR 269, 271). Plaintiff also testified that she could not carry objects heavier than "a dish with some food" or a pot. (AR 34). Plaintiff explained that she can walk about fifteen minutes, stand for about twenty minutes, and sit for about half an hour at a time, while needing to lay down about three or four times a day. (AR 379-380). This evidence refutes the ALJ's finding.

The ALJ also erred by failed to consider all of Plaintiff's impairments in her RFC conclusion. Where there is a severe impairment at step two, all medical impairments must be considered in the remaining steps of the sequential analysis. Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012). Plaintiff had a history of prolactinoma, obesity, Sjogren's syndrome,

osteoporosis, hyperparathyroidism, hypothyroidism, metabolic syndrome, back pain/degenerative disc disease, hyperlipidemia and fibromyalgia that should have been taken into consideration for the RFC finding. (AR 563-567, 707, 710, 711, 719-721, 729, 733, 743). All of the above-mentioned impairments have support in the record. The RFC failed to properly include all of Plaintiff's documented limitations.

    **2.   ALJ's Finding That Plaintiff Is Capable of Performing Past Relevant Work as an Electrical Assembler Is Incorrect.**

The ALJ must compare the Plaintiff's limitations to Plaintiff's prior work in the Dictionary of Occupational Titles. This information usually comes in through a vocational expert. The ALJ found that because Plaintiff could perform a wide range of light work, she could perform her past work as an electrical assembler. (AR 324). As discussed above, Plaintiff is unable to perform a wide range of light work and thus is unable to perform her past relevant work as generally performed.

C.   **The ALJ Failed to Provide Clear And Convincing Reasons To Reject Plaintiff's Testimony And Did Not Properly Consider Lay Witness Statements**

1.   **The ALJ Did Not Give Clear And Convincing Reasons To Reject Plaintiff's Testimony**

Throughout the process of determining disability a claimant's subjective symptoms are a critical issue. Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1291 (9th Cir. 1990). Because subjective symptoms, such as pain, are highly idiosyncratic, a plaintiff is not required to adduce proof of a medical impairment that would make the claimed level of pain inevitable. As long as a plaintiff offers evidence of a medical impairment that could reasonably be expected to produce pain, the ALJ may not require the degree of pain to be corroborated by objective medical evidence. Bunnell v. Sullivan, 947 F.29 341, 346-347 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1282. The ALJ may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. Bunnell, 947 F.2d at 346-347.

Here, the ALJ found that claimant's credibility was lacking because allegedly there were no significant clinical findings and also due to the lack of significant ongoing medical treatment for

1    pain.  (AR 323).  In fact, though, Plaintiff's medical history as

2    noted by Drs. Orozco, Rabkin and Thurman included significant

3    clinical findings and extensive treatment for pain.  Plaintiff

4    also received injections, tests and other forms of treatment to

5    cure her of her pain.  (AR 247-248, 245-246, 552, 638, 707, 570-

6    597).  There is also evidence of Plaintiff's pain throughout the

7    medical reports done by every doctor she visited.  (AR 162-164,

8    171-175, 185-186, 192-193, 195-197, 255-261, 709-714, 717-721,

9    733-752).  Accordingly, the reasons provided by the ALJ for

10   rejecting Plaintiff's testimony were not supported by the record.

11

12       **2.   The ALJ Erred By Disregarding Lay Witness Testimony**

13

14        The ALJ is required to consider the credibility of law

15   testimony provided by family members and friends.  Bruce v.

16   Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).  If an ALJ rejects

17   lay witness testimony, the ALJ must provide specific reasons that

18   are germane to each witness whose testimony he rejects.  Id.

19   (citing Stout v. Comm'r, 454 F.3d 1050, 104 (9th Cir. 2006)).

20   Plaintiff's son, Manuel Diaz, provided testimony that

21   corroborated Plaintiff's pain.  (AR 515-522).  The ALJ's decision

22   did not reflect adequate consideration of this testimony.  (AR

23   315-325).

24

25

26

27

28

1

2    **D.    If Plaintiff's Subjective Testimony Were Credited As True**

3           **And All The Other Evidence Were Given Proper Weight,**

4           **Plaintiff Would Be Found Disabled**

5

6           The court must ordinarily remand for an award of benefits

7    where "(1) the record has been fully developed and further

8    administrative proceedings would serve no useful purpose; (2) the

9    ALJ has failed to provide legally sufficient reasons for

10   rejecting evidence, whether claimant testimony or medical

11   opinion; and (3) if the improperly discredited evidence were

12   credited as true, the ALJ would be required to find the claimant

13   disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th

14   Cir. 2014). (citing, inter alia, Lingenfelter v. Astrue, 504

15   F.3d 1028, 1041 (9th Cir. 2007); Orn, 495 F.3d at 640; Smolen, 80

16   F.3d at 1292). The "credit-as-true" rule allows courts the

17   flexibility to remand for further proceedings, rather than an

18   award, only where the record as a whole "creates serious doubt"

19   that a claimant is disabled. Id. at 1021.

20

21          No such doubt exists in this case. The VE stated that the

22   Plaintiff's need of breaks due to dizziness would "eliminate all

23   employment." (AR 389). The objective medical evidence clearly

24   shows that Plaintiff is suffering from multiple severe

25   impairments. Plaintiff testified to her abilities and pain,

26   stating that she cannot stand, sit or walk for long periods of

27   time. (AR 379). Plaintiff's son also noted that Plaintiff could

28   no longer do the activities she once did. (AR 519). The Court

is satisfied that the record has been fully developed, that further administrative proceedings would serve no useful purpose, and that if the discounted evidence, including the treating physicians opinions and Plaintiff's testimony, were credited as true, Plaintiff would be entitled to benefits.

## VIII.

### CONCLUSION

Consistent with the foregoing, it is ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for the awards of benefits. The Clerk of the Court shall serve copies of this order and the Judgment on counsel for both parties.

DATED: February 13, 2015


_____/S/_____

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

1

2

<u>**NOTICE**</u>

3    Reports and Recommendations are not appealable to the Court

4 of Appeals, but may be subject to the right of any party to file

5 objections as provided in the Local Rules Governing the Duties of

6 Magistrate Judges and review by the District Judge whose initials

7 appear in the docket number.  No notice of appeal pursuant to the

8 Federal Rules of Appellate Procedure should be filed until entry

9 of the judgment of the District Court.

10

11 **THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW**

12 **OR ANY OTHER LEGAL DATABASE.**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28